IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:
    David S. Schlundt and
    Jennifer A. Schlundt,        Case No. 14-20454-beh

        Debtors.                        Chapter 7

Reinhart FoodService L.L.C.,

        Plaintiff,                Adversary No. 20-02091-beh

v.

David S. Schlundt and
Jennifer A. Schlundt,

        Defendants.

**DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

In 2003, David Schlundt signed a personal guaranty to assure payment of his business's debts to Reinhart FoodService L.L.C. Eleven years later, he and his wife filed a no-asset Chapter 7 bankruptcy case. The debtors obtained their discharge in 2014, and in 2018, Schlundt's business ordered and received some additional goods and services from Reinhart for which it did not pay. The business closed shortly thereafter. Reinhart asked to reopen the debtors' case, seeking a declaration that its post-petition invoice for those 2018 goods created a fresh liability under the personal guaranty. Reinhart moved for summary judgment in its favor. The debtors objected, arguing that all debts related to the personal guaranty, whether matured or contingent, were discharged in 2014.

Based on controlling Seventh Circuit precedent, the Court denies Reinhart's motion for summary judgment. Moreover, because any motion for leave to amend the pleadings would be futile, the Court grants summary judgment in favor of the debtor-defendants, pursuant to Federal Rule of Civil Procedure 56(f).

The Court has jurisdiction under 28 U.S.C. § 1334 and the Eastern District of Wisconsin's July 16, 1984, order of reference entered under 28 U.S.C. § 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

**FACTS**

The following facts, taken from pleadings and from affidavits or declarations submitted with the parties' summary judgment briefing, are undisputed unless otherwise noted.

From 2003 to 2018, David Schlundt was the owner and sole member of The Refuge, LLC, a restaurant business in Antigo, Wisconsin. ECF No. 30-1, ¶ 1. On September 11, 2003, The Refuge entered into a supply agreement with Reinhart Foodservice, L.L.C. for Reinhart to provide food and restaurant supplies to The Refuge. ECF No. 30-1, ¶ 2; ECF No. 5-1, at 3. The Agreement includes an "Individual Personal Guaranty," by which Schlundt personally guaranteed prompt payment of any obligation of The Refuge to Reinhart. *Id.* The Guaranty stated, in part:

> I, David Schlundt, for and in consideration of your extending credit at my request to The Refuge, LLC personally guarantee prompt payment of any obligation of the Company to Reinhart FoodService, Inc. ("Seller"), whether now existing or hereinafter incurred, and I further agree to bind myself to pay on demand any

> sum which is due by the Company to Seller whenever the Company fails to pay same. It is understood that this guaranty shall be an absolute, continuing and irrevocable guaranty for such indebtedness of the Company.
> . . .
> If the guarantied indebtedness is not paid by me when due, and this guaranty is placed in the hands of an attorney for collection, or suit is brought hereon, or it is enforced through any judicial proceeding whatsoever, I shall pay all attorneys' fees and court costs incurred by Seller.

*Id.*

Over a decade after opening The Refuge, Schlundt and his wife, Jennifer Schlundt, filed a joint petition for Chapter 7 bankruptcy relief. Case No. 14-20454-beh, ECF No. 1. The debtors failed to list Reinhart on their Schedule F and on the creditor matrix, *see* Case No. 14-20454-beh, ECF Nos. 1, 14, although The Refuge may have owed Reinhart over $10,000 at the time the debtors filed their petition. ECF No. 19, ¶ 9. No claims bar date was set. On April 11, 2014, the Chapter 7 trustee issued a Report of No Distribution (no asset), and on April 21, 2014, the joint debtors received a Chapter 7 discharge. Case No. 14-20454-beh, ECF No. 18.

Throughout the personal bankruptcy and for several years thereafter, The Refuge continued to operate and work with Reinhart under the Agreement. There is no real dispute that Reinhart did not learn of the debtors' bankruptcy until sometime after it was filed. Schlundt averred that all of The Refuge's suppliers were made aware of the debtors' bankruptcy, and despite that knowledge, Reinhart did not ask for a new guaranty. ECF No. 30-1 (Schlundt

Decl.), ¶ 15. Schlundt did not identify when the suppliers were made aware. Schlundt also stated that he

> believe[d] if a Reinhart employee did not know of my bankruptcy while it was pending [he or she] would have learned shortly after as it was common knowledge. My sales representative would have certainly known as all of my suppliers were aware and many changed their payment terms with me after our filing. Moreover, my bankruptcy would have been reflected on my credit report on all three services after I filed, which, presumably, Reinhart would have been monitoring.

*Id.* Jeff Peters of Reinhart asserted that Reinhart did not learn of the debtors' bankruptcy until after July 2018. ECF No. 31-1 (Second Peters Decl.), ¶ 14.[1] Peters further stated that "Reinhart would not have provided The Refuge with credit without the personal guaranty of Debtors. If Reinhart were made aware of Debtors' personal bankruptcy, Reinhart would have either required Debtors to enter into a new guaranty post-petition or would have discontinued providing the Refuge with goods on credit." *Id.*, ¶¶ 15–16.

Reinhart filed an unopposed motion to reopen the debtors' case on December 30, 2019, seeking the opportunity to file an adversary proceeding whereby the Court could declare "the post-petition debt owed by Debtors to Reinhart as not subject to Debtors' discharge because it is a debt which arose after the date of the order of relief." Case No. 14-20454-beh, ECF No. 20, at 1.

---

[1] The Second Peters Declaration was included with Reinhart's reply brief on summary judgment. The debtors moved to strike the affidavit, or alternatively for leave to submit a sur-reply, based on the new facts regarding notice to Reinhart and its possible reaction included in the second Peters declaration. The debtors' sur-reply did not include a countering affidavit but argued that the facts Peters averred in his second declaration created a fact issue precluding summary judgment in favor of Reinhart. ECF No. 45, at 2.

Reinhart wanted such a declaration so that it could pursue a claim in state court without fear of violating the Schlundts' discharge injunction. *Id.* at 4.

Reinhart filed this adversary proceeding contending that it is now owed $36,839.32 for unpaid invoices on goods delivered from March 2018 through May 2018, plus $15,474.50 in attorneys' fees, as amounts subject to the guaranty. ECF No. 5, ¶¶ 15–18. Schlundt responds that any obligation he had under the Individual Personal Guaranty was included in his Chapter 7 discharge. Schlundt also disputes the amount due, contending that Reinhart failed to account for some payments made by The Refuge. ECF No. 30-1, ¶ 18.

## ARGUMENTS

In its amended complaint, Reinhart asks for a judgment declaring that the debt owed "is non-dischargeable pursuant to Section 523(a)(3)[2] of the United States Bankruptcy Code and [therefore] the [d]ebt was not discharged under Section 727(b)[3] of the United States Bankruptcy Code." ECF No. 5, at 6.

---

[2] Reinhart's amended complaint does not specify on which subsection of Section 523(a)(3) it relies. The full subsection provides:
**11 U.S.C. § 523. Exceptions to Discharge.**
(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt— . . . (3) neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—
> (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; . . .
> (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request; . . . .

[3] **11 U.S.C. § 727. Discharge.**
(b) Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof

During summary judgment briefing, Reinhart adjusted its theory of relief to rely solely on section 727(b). Reinhart asserts that Schlundt's liability for the 2018 credit extensions to The Refuge did not "ar[i]se before the date of the order for relief," but instead at the time of the credit extensions, and therefore gave rise to post-petition debts that are not subject to the discharge provisions of section 727. ECF No. 19, at 5–8; *see also* ECF No. 47. Further, Reinhart asks that the Court declare David Schlundt and Jennifer Schlundt jointly and severally liable for the debt pursuant to the Wisconsin Marital Property Act.[4] *Id.*

The Schlundts contend that the law on dischargeability favors them such that the Court should deny Reinhart's motion and grant them judgment as a matter of law, pursuant to Federal Rule of Civil Procedure 56(f) (incorporated by Fed. R. Bankr. P. 7056). ECF No. 48. In particular, the Schlundts argue that any debt from the personal guaranty arose in 2003 when Schlundt signed the contract, and that their 2014 Chapter 7 discharge extinguished any and all personal liability to Reinhart. ECF No. 30, at 4. Alternatively, the Schlundts assert there are genuine issues of material fact as to lack of notice, the amount owed, and the reasonableness of the attorneys' fees sought which would defeat summary judgment for Reinhart. ECF No. 30, at 2. The Schlundts also argue

---

of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this title.

[4] **Wis. Stat. § 766.55. Obligations of Spouses.**
(1) An obligation incurred by a spouse during marriage, including one attributable to an act or omission during marriage, is presumed to be incurred in the interest of the marriage or the family. A statement separately signed by the obligated or incurring spouse at or before the time the obligation is incurred stating that the obligation is or will be incurred in the interest of the marriage or the family is conclusive evidence that the obligation to which the statement refers is an obligation in the interest of the marriage or family, except that the existence of that statement does not affect any interspousal right or remedy.

that there is no factual or legal basis to hold Jennifer Schlundt liable on any debt under the Wisconsin Marital Property Act. *Id.* at 10–13.

## DISCUSSION

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate if the pleadings and affidavits on file show there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (incorporated by Fed. R. Bankr. P. 7056). The moving party bears the burden to establish that there is no genuine issue about any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). The non-moving party then must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-250 (1986).

At the summary judgment stage, the Court's role is *not* to weigh the evidence and determine the truth of the matter, but to determine whether there is something to try – "whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. A factual dispute is "genuine" only if there is sufficient evidence for a reasonable fact-finder to find in favor of the non-moving party. *Id.* at 249. For a fact to be material, it must be "outcome-determinative under governing law." *Contreras v. City of Chicago*, 119 F.3d 1286, 1291–92 (7th Cir. 1997).

Even where many or all of the material facts are undisputed, the Court still must ascertain that the judgment is proper "as a matter of governing law." *Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994). So, when a movant has failed to make an initial showing that the agreed-upon facts support a judgment in its favor, "the court is obligated to deny the motion." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015); *see also Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 415 (7th Cir. 2019) ("[W]hen a movant fails to meet its initial summary-judgment burden, the burden does not shift to the nonmovant and the motion should be denied.").

## B. Personal Guaranty

The parties focus the bulk of their arguments on whether the individual personal guaranty signed by Schlundt in 2003 created a *pre-petition* debt that was discharged in the Schlundts' 2014 Chapter 7 bankruptcy, or set the stage for a *post-petition* debt incurred when Reinhart FoodService L.L.C. extended credit in 2018.

Section 727(b) discharges the debtors from "all debts that arose before the date of the order for relief . . . ." 11 U.S.C. § 727(b). The term "debt" means liability on a claim. 11 U.S.C. § 101(12). The term "claim" means a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A).

Two views have developed from courts addressing whether a pre-petition guaranty falls within the definitions of "debt" and "claim." The first view holds that a debtor's discharge does not extinguish personal liability for post-petition credit extensions or enforcement claims. *See McClure-Johnston Co., Inc. v. Jordan (In re Jordan)*, No. 04-11372-DHW, 2006 WL 1999117 (Bankr. M.D. Ala. 2006); *Weeks v. Isabella Bank Corp. (In re Weeks)*, 400 B.R. 117 (Bankr. W.D. Mich. 2009); *Nat'l Lumber Co. v. Reardon (In re Reardon)*, 566 B.R. 119 (Bankr. D. Mass. 2017); *Dulles Elec. & Supply Corp. v. Shaffer (In re Shaffer)*, 585 B.R. 224 (Bankr. W.D. Va. 2018). The second view holds that a pre-petition guaranty is a contingent claim that may be discharged in a later bankruptcy. *See Orlandi v. Leavitt Family Ltd. P'ship (In re Orlandi)*, 612 B.R. 372 (6th Cir. B.A.P. 2020); *In re Lipa*, 433 B.R. 668 (Bankr. E.D. Mich. 2010); *Russo v. HD Supply Elec., Ltd. (In re Russo)*, 494 B.R. 562 (Bankr. M.D. Fla. 2013).

In determining whether a claim arose pre-petition or post-petition, the Seventh Circuit has adopted the "conduct test." *Saint Catherine Hosp. of Ind., LLC v. Ind. Family and Soc. Servs. Admin.*, 800 F.3d 312, 315 (7th Cir. 2015) (concluding that reimbursements a creditor withheld post-petition in satisfaction of the debtor's obligation to pay a yearly assessment fee, which was assessed based on prepetition activities and in accordance with law passed prepetition, was an act to "recover a claim against the debtor that arose before the commencement of the case" and therefore subject to the automatic stay of 11 U.S.C. § 362(a)(6)). Under the conduct test, "the date of a claim is determined by the date of the conduct giving rise to the claim." *Id.* The conduct

test largely has replaced the accrual theory, under which "the date of a claim was determined pursuant to the state law [when] liability for the claim arose." *Id.* Because the conduct test captures a larger number of claims (*i.e.*, contingent and unmatured), the Seventh Circuit and other courts have found it to be most consistent with the Bankruptcy Code's broad definitions of claim and debt. *Id.* at 315–16. The Seventh Circuit noted "[t]he determination of what conduct gives rise to a claim will vary depending on the nature of the liability, be it tort, contract, or tax." *Id.* at 316 (citing *In re Chicago, Milwaukee, St. Paul & Pac. R. Co.*, 974 F.2d 775, 781 (7th Cir. 1992)).

Under the conduct test, the Seventh Circuit explained that the activity that gives rise to a claim under a contract is generally the signing of the contract, and therefore, liability arises on the date that a contract is signed. *Saint Catherine,* 800 F.3d at 315 (citing *In re Rosteck,* 889 F.2d 694, 696 (7th Cir. 1990)). This is most consistent with the Bankruptcy Code's definitions of claim and debt, and "under most circumstances, finding that a claim arose 'at the earliest point possible' will best serve the policy goals underlying the bankruptcy process." *Saint Catherine,* 800 F.3d at 317 (quoting *In re Chicago,* 974 F.2d at 782); *see also In re Lipa,* 433 B.R. at 671 ("[T]he terms 'claim' and 'debt' are defined as broadly as possible to enable the debtor to deal with all legal obligations in a bankruptcy case. . . . This includes the debtor's guaranty agreement."); *In re Russo,* 424 B.R. at 568 ("[A] 'claim' encompasses any future obligation that may arise under a pre-petition continuing guaranty.").

The conduct test has been criticized for potentially discharging a creditor's claim before it has reason to know the claim exists. *Hardegger v. Clark*, 2017 CO 96, ¶ 21–22, 403 P.3d 176 (citing *In re Huffy Corp.*, 424 B.R. 295, 304 (Bankr. S.D. Ohio 2010)). In light of these due process concerns, some courts have narrowed the conduct test to require a pre-petition relationship, such that the creditor could have ascertained through the exercise of reasonable due diligence that it had a claim at the time the petition was filed. *Id.* The Seventh Circuit acknowledged that some courts consider whether there was pre-petition relationship—"such as contact, exposure, impact, or privity, between the debtor's pre-petition conduct and the claimant"—but declined to decide whether such consideration always is required. *Saint Catherine*, 800 F.3d at 316 (quoting *In re Piper Aircraft Corp.*, 162 B.R. 619, 627 (Bankr. S.D. Fla. 1994)).

In this case, even the relationship inquiry leads to the conclusion that Reinhart's claim arose pre-petition because Reinhart had a pre-petition relationship with Schlundt via the contract signed in 2003 and continuing through the date of the 2014 petition. The guaranty expressly contemplated future indebtedness: "I . . . personally guarantee prompt payment of any obligation . . . whether now existing or hereinafter incurred . . . ." In sum, Schlundt assumed a contingent liability at the time he signed the guaranty.

Reinhart points to *In re Jordan, In re Reardon,* and *In re Shaffer* to support its argument that debts incurred under a guaranty signed pre-petition are not discharged in a later bankruptcy case. Each of these cases are

distinguishable, however, as they rely primarily on state law. In *Jordan*, the court cited *Olin Corp. v. Riverwood Int'l Corp. (In re Manville Forest Products Corp.)*, 209 F.3d 125, 128 (2d Cir. 2000), to conclude that a determination of the date on which a claim arose depended on state law. 2006 WL 1999117, at *2. The *Jordan* court then used Alabama law to distinguish a restricted guaranty from a continuing guaranty and found that "the guarantor's contingent liability arises at the time of the making of each guaranteed loan." *Id.* at *3. Similarly, *In re Reardon* followed *Jordan* to conclude that under Massachusetts law, "a continuing guaranty would be seen as giving rise to a divisible series of individual transactions, with liability for each extension of credit arising at the time of its extension." 566 B.R. at 128. While not invoking it by name, both *Jordan* and *Reardon* courts relied on the accrual theory, which posits that "no claim exists until a right to payment accrues under state law." *Avellino & Bienes v. M. Frenville Co., Inc. (In re M. Frenville Co., Inc.)*, 744 F.2d 332, 337 (3d Cir. 1984), *overruled by Grossman's Inc. v. Van Brunt (In re Grossman's Inc.)*, 607 F.3d 114, 120 (3d Cir. 2010).

As discussed above, the Seventh Circuit has rejected the accrual theory and replaced it with the conduct test. Accordingly, application of the conduct test, and not a discernment of when Wisconsin law would determine Reinhart's claim to have arisen, is the pertinent inquiry in this adversary proceeding.

At least one court cited by Reinhart purported to apply the conduct test but declined to apply it to the 'earliest conduct' as the Seventh Circuit teaches. The *Shaffer* court considered both the debtor's signing of the guaranty and the

later extension of credit and default. 585 B.R. at 229. The *Shaffer* court rejected the view of other courts which "assume the contingency is the future default on existing right to payment, not that the contingency is the extension of new credit." *Id.* at 230. The *Shaffer* court reasoned that "[u]nder a continuing guaranty it is unknown what future extensions may be made and thus the liability as of the signing of the guaranty is not ascertainable." *Id.* While the *Shaffer* debtors had signed the continuing guaranty pre-petition, the bankruptcy court determined that at the time they filed bankruptcy, liability had not arisen for extensions of credit for purchases not yet contemplated or committed to be made. *Id.*

This Court does not find *In re Shaffer* to be consonant with Seventh Circuit authority. Applying the conduct test of *Saint Catherine Hosp.* to the earliest conduct between debtors and Reinhart, and mindful that the bankruptcy discharge is meant to afford debtors a fresh start, this Court finds that signing the contract was the conduct giving rise to the claim, the debt under Schlundt's personal guaranty was contingent on a future default, and therefore the debt was dischargeable as part of the debtors' 2014 bankruptcy discharge.

**C.  Notice**

As noted above, the parties raise a degree of dispute as to when Reinhart learned of the Schlundts' bankruptcy—which is relevant to Reinhart's invocation (and subsequent cursory treatment) of section 523(a)(3). But based on the allegations of the amended complaint and the declaration testimony

submitted in support of Reinhart's summary judgment motion, the Court need not make a factual determination of when Reinhart received notice or how close in time after the discharge it should have known of the debtors' bankruptcy filing to deny summary judgment. This is because Reinhart cannot plausibly state a claim for relief under either subsection of § 523(a)(3).

First, "under the plain language of § 523(a)(3)(A), in a no-asset, no-bar-date bankruptcy case, . . . omitted garden variety debts"—i.e., debts that do not fall within the scope of § 523(a)(2), (4) or (6)—"[are] included in the discharge of § 727." *In re Guseck*, 310 B.R. 400, 402–03 (Bankr. E.D. Wis. 2004) (citing Lauren A. Helbling and The Hon. Christopher M. Klein, *The Emerging Harmless Innocent Omission Defense to Nondischargeability Under Bankruptcy Code § 523(a)(3)(A): Making Sense of the Confusion Over Reopening Cases and Amending Schedules to Add Omitted Debts,* 69 Am. Bankr. L.J. 33, 39 (Winter 1995) ("The discharge is said to be good against the world in the sense that it applies to all unscheduled debts except those that are expressly made non-dischargeable by § 523."))

Second, to the extent that Reinhart's briefs can be read as pursuing a cause of action under § 523(a)(3)(B)—which applies to debts arising from potentially nondischargeable conduct under either 11 U.S.C. § 523(a)(2), (4), or (6)—such argument fails. *See* ECF No. 31, at 7 ("Additionally, the harm caused by Debtors' lack of notice of their bankruptcy to Reinhart goes beyond the ability to file a claim in a no-asset Chapter 7 case."); *see also* ECF No. 52, at 5 ("Debtors knew that the credit The Refuge received from Reinhart was

dependent on the Guaranty. Accordingly, debtors prevented Reinhart from knowing of their bankruptcy when it was pending."). While these statements in briefing may allude to a notion of fraud, plaintiffs are required to put their fraud allegations in their pleadings, and then state them with particularity. *See* Federal Rule of Civil Procedure 9(b) (incorporated by Bankruptcy Rule 7009); *In re Rinaldi*, No. 11-35689-svk, Adv. No. 12-2412, 2013 WL 655514, *17 (Bankr. E.D. Wis. Feb. 22, 2013). Here, the amended complaint is bereft of any allegation that a debt between Schlundt and Reinhart at the time of the 2014 bankruptcy filing was incurred via fraud or other misconduct. More specifically, Reinhart does not allege any facts suggesting that the conduct giving rise to its claim against Schlundt personally—Schlundt's signing of the personal guaranty—was fraudulent or otherwise supports a claim of nondischargeability under § 523(a)(2), (4), or (6). The Peters declarations likewise fail to allege that a debt incurred before the Schlundts filed their bankruptcy case plausibly falls within the scope of § 523(a)(2), (4), or (6).

Reinhart's oral argument in rebuttal expands on its briefs to urge that amendment is an appropriate alternative. *See* ECF No. 47 (oral argument audio, in which Attorney von Helms states, ". . . If it is determined that the guaranty is actually created pre-petition and that was when the debt was incurred, then we do have a [section] 523 issue here. Because what we're having here, is what would amount to a situation where the debtors' actions would have been willful and malicious to the extent that they went ahead and filed a bankruptcy, did not tell Reinhart about the bankruptcy, and then when

it got post-petition debt, knowing that when they couldn't pay such bills, they could turn around and say 'Well, our guaranty is gone, it was discharged, sorry we didn't tell you about it.' And I think that would create a [section] 523(a) issue which would prevent such post-petition debt from being declared dischargeable.").

This is a through-the-looking glass argument. Reinhart is trying to use its (or its counsel's) characterization of why the debtors failed to give Reinhart timely notice of their bankruptcy to *post hoc* characterize the nature of Mr. Schlundt's guaranty liability at the time of filing.

For Reinhart to amend its complaint at this juncture, it would have to obtain written consent from the Schlundts or seek leave of the Court, which may be entertained only by motion. Fed. R. Civ. P. 15(a)(2) (incorporated by Bankruptcy Rule 7015); *see also* Fed. R. Civ. P. 7(b)(1) (incorporated by Bankruptcy Rule 7007) ("A request for a court order must be made by motion."). And while the Federal Rules reflect a liberal attitude toward amending pleadings, *see* Fed. R. Civ. P. 15(a)(2), and *Foman v. Davis*, 371 U.S. 178, 181 (1962) (explaining that the "spirit of the Federal Rules" is to ensure "decisions on the merits"), it is equally true that courts have "broad discretion to deny leave to amend" under appropriate circumstances, including "where the amendment would be futile." *Gonzales-Koeneke v. West,* 791 F.3d 801, 807 (7th Cir. 2015); *Gandhi v. Sitara Capital Mgmt., LLC*, 721 F.3d 865, 869 (7th Cir. 2013) ("district courts may refuse to entertain a proposed amendment on futility grounds when the new pleading would not survive a motion to

dismiss"). Denying leave to amend is appropriate when a plaintiff fails to establish that the proposed amendment would cure the deficiencies identified in the earlier complaint. *Gonzales-Koeneke*, 791 F.3d at 807. *Compare In re Papi*, 427 B.R. 457, 466 (Bankr. C.D. Ill. 2010) (while deciding that plaintiff's claim for sanctions arising from a state court marital dissolution action was contingent and under the conduct theory would constitute a claim that arose before the debtor filed his petition, the court noted that the plaintiff's remedy was to have the debt determined to be nondischargeable; although the plaintiff failed to cite sec. 523(a)(6) or identify any "willful and malicious" acts in her complaint, she argued in opposition to a motion to dismiss that the conduct underlying the sanctions motion was willful and malicious, and therefore nondischargeable under sec. 523(a)(6), and the court granted leave to amend).

Here, unlike in *Papi*, a further amendment to state a claim under section 523(a)(3)(B) would be futile because Reinhart held no pre-petition debt obtained via fraud or by virtue of willful and malicious conduct, nor was there a pending state court claim asserting intentional wrongful conduct. Neither Reinhart's amended complaint nor the Peterson declarations make that claim. The only debt at the time of the Schlundts' petition was a $10,000 pre-petition debt under the guaranty, which Reinhart concedes was included in the 2014 discharge. *See, e.g., In re Jakubiak*, No. 15-21424-GMH, 2019 WL 1453067, at *4 (Bankr. E.D. Wis. March 29, 2019) (explaining that, under sec. 523(a)(3), "[i]f an unlisted creditor with neither notice nor knowledge of the bankruptcy case **is** owed an unscheduled debt that is covered by sec. 523(a)(3)(A) (*i.e.*, is not for

fraud or other intentional harms covered by sec. 523(a)(2), (4) or (6)), then the debt is discharged as long as (i) the clerk gave (other) creditors notice that the estate appeared to have no assets from which a dividend could be paid, (ii) the debtor omitted the debt and creditor inadvertently, and (iii) the omission did not harm the creditor") (emphasis in original).

The fact that The Refuge later obtained goods and services from Reinhart in 2018 for which it did not pay does not equate to a claim for pre-petition, *i.e.*, 2014 or earlier, fraud. Even though Reinhart's pleadings and Peters' second declaration assert that if Reinhart had known in 2014 of Schlundt's bankruptcy it would have required a reaffirmation of the individual personal guaranty, that assertion is not a claim of a fraudulently derived debt, or a liability arising from willful and malicious conduct. No further amendment to the complaint could "go back in time" to recharacterize a prepetition debt as based on 2018 conduct. Because such amendment would be futile, the Court will not entertain any motion to amend.

## CONCLUSION

For the reasons set forth above, the Schlundts' 2014 discharge order[5] extinguished any personal liability under the Individual Personal Guaranty and the debtor-defendants have established that they are entitled to judgment as a

---

[5] This conclusion obviates any need to address three other disputes raised by the parties: (1) whether Jennifer Schlundt also has continuing liability for post-petition debt, pursuant to Wisconsin's Marital Property Act, Wis. Stat. § 766.55; (2) the actual amount of the balance owed to Reinhart by The Refuge for goods provided between March–May 2018; and (3) the reasonableness of Reinhart's attorney fees claimed under the Individual Personal Guaranty.

matter of law. The Court will enter a separate order consistent with this decision.

Dated: August 19, 2021

By the Court:

Beth E. Hanan
United States Bankruptcy Judge